IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:18-CR-200-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JONG WHAN KIM, )<br>)<br>Defendant. ) | MEMORANDUM OPINION<br>(SEALED)[1] |

This matter came before the court July 14, 2021, for hearing on defense counsel's motion to withdraw due to a conflict of interest. (DE 147). The court memorializes herein its reasons for granting the motion.

BACKGROUND

The facts underlying defense counsel's purported conflict of interest are as follows. On July 8, 2021, the government extended its first plea offer to defendant, which if accepted, would require defendant to stipulate that: "the proceeds of the offense include unrecovered funds in the amount of $55,934.54 ['the subject funds'], which had been placed on deposit in Account ▮▮▮▮▮▮▮ at Anderson Brother [sic] Bank, and $37,523.61 of which was withdrawn on July 24, 2018, by Silvia Kim." (Mot. (DE 147) at 5).

According to defense counsel, they were retained on a $30,000.00 legal fee in July 2018, around the time Silvia Kim, defendant's estranged wife, withdrew $37,523.61 from the subject

---

[1] Where the court's order relies upon confidential information contained in the sealed materials in this case, the court SEALS this order. Within 14 days, the parties shall confer and tender by U.S. Mail to the clerk's office a proposed redacted order. If said order meets with the court's approval, it will be lodged on the public docket. If the court determines proposed redactions of any portion of this order not subject to sealing, further notice will follow.

funds. Thus, defense counsel contends that the proposed plea agreement requires defendant to stipulate that he paid his legal fees with proceeds of the instant offenses, subjecting those fees to forfeiture.

COURT'S DISCUSSION

"A criminal defendant's Sixth Amendment right to effective assistance of counsel includes a right to counsel unhindered by conflicts of interest." Mickens v. Taylor, 240 F.3d 348, 355 (4th Cir. 2001) (citation omitted). As a result, "trial courts have an obligation to inquire into potential conflicts of interest when they know or reasonably should know of a particular conflict." Id. at 358 (citing Wood v. Georgia, 450 U.S. 261, 272-73 (1981)). In discharging this duty, courts should consider a conflict of interest objection raised by defense counsel to be "particularly persuasive" because: "(1) defense counsel is in the best position to evaluate his potential conflicts of interest; (2) defense attorneys are obligated to inform the court of conflicts of interest; and (3) attorneys are officers of the court whose declarations to the court are 'virtually made under oath.'" Id. at 357 (quoting Holloway v. Arkansas, 435 U.S. 475, 485–86 (1978)).

On the basis of these facts, defense counsel presented conflict of interest under Rule 1.7(a)(2), of the North Carolina Rules of Professional Conduct, which provides in pertinent part: "a concurrent conflict of interest exists if: . . . the representation of one or more clients may be materially limited . . . by a personal interest of the lawyer." See N.C. R. Prof. Conduct 1.7(a)(2).[2] In particular, defense counsel's personal, pecuniary interest in opposing forfeiture of the legal fees materially limits their ability to advise defendant on whether he should accept the proposed plea offer. See Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 632 n.10 (1989) ("The second possible conflict arises in plea bargaining: petitioner posits that a lawyer may advise a

---

[2]  Local Criminal Rule 57.1(j) incorporates by reference the North Carolina Rules of Professional Conduct.

client to accept an agreement entailing a more harsh prison sentence but no forfeiture—even where contrary to the client's interests—in an effort to preserve the lawyer's fee. Following such a strategy, however, would surely constitute ineffective assistance of counsel.").

However, the government argued that defense counsel's representation was not materially limited because: 1) the facts underlying the conflict of interest are not new; 2) defense counsel has not demonstrated a clear connection between the legal fees and the subject funds; 3) defense counsel has not demonstrated that they knew, at the time of payment, that the legal fees were paid with illegal proceeds; 4) the government offered to strike the stipulation from the proposed plea agreement; and 5) defendant can waive the conflict of interest.

The court addresses below each ground relied upon by the government.

A.  Timeliness

First, the government argued that the motion to withdraw was untimely because defense counsel has been aware of the facts underlying the conflict of interest—namely, that the government seeks forfeiture of the subject funds—since the inception of the case. In support, the government indicates that the original indictment included a forfeiture notice, identifying the subject funds. Moreover, at defendant's January 17, 2019, detention hearing, which defense counsel attended, defendant's daughter testified that Silvia Kim withdrew $37,000.00 from the subject funds to retain defense counsel. (See Mot. (DE 151) at 3-4) (quoting detention hearing transcript).

The present record suggests that defense counsel has known the legal fees may be subject to forfeiture since at least January 17, 2019. Importantly, however, the conflict of interest did not materialize fully until the government extended its first plea offer on July 8, 2021. See generally, United States v. Urutyan, 564 F.3d 679, 686 (4th Cir. 2009) ("The likelihood and dimensions of

nascent conflicts of interest are notoriously hard to predict." (citation omitted)). Prior to that point, it was in defendant's interest, and defense counsel's interest, to oppose forfeiture of the subject funds. On July 8, 2021, however, defendant's interests became adverse to defense counsel's interest, because it became advantageous for defendant to agree to forfeiture of the legal fees. Since defense counsel moved to withdraw almost immediately after the July 8, 2021, plea offer was extended, the court found the motion to be timely.

      B.      Clear Connection

Next, the government argued that defense counsel failed to demonstrate a "clear connection" between the subject funds and the legal fees, and absent a clear connection, there is no conflict. According to the government, the subject funds may have been used to pay defendant's $30,000.00 bond in connection with his state court charges, instead of the legal fees.

The government does not cite any authority for the proposition that a "clear connection" is required. In any event, defendant's daughter testified under oath that Silvia Kim withdrew $37,000.00 from the subject funds to retain counsel for defendant. (Transcript (DE 92) 19:10-19). As such, the court found unpersuasive the government's argument premised upon lack of connection between the legal fees and the subject funds.

      C.      Awareness of Illicit Proceeds

The government also contended that there is no conflict unless defense counsel was aware, at time of payment, that the legal fees were paid with illegal proceeds. The government's argument rests upon 21 U.S.C. § 853(n)(6)(B), which allows a court to exempt from forfeiture certain property, if at hearing, the court determines that a petitioner has established by a preponderance of the evidence that he or she is a "bona fide purchaser for value of the right, title or interest in the property and was at the time of purchase reasonably without cause to believe that the property was

subject to forfeiture." 21 U.S.C. § 853(6)(B). The possibility that counsel may qualify as bona fide purchasers for value at a post-conviction forfeiture hearing does not eliminate the present conflict of interest, because it is currently unknown if defense counsel will meet their burden in establishing their status as bona fide purchasers for value.

The government argues that defense counsel will qualify as bona fide purchasers for value because they received the legal fees four months before the original indictment was filed. However, as a court in this circuit concluded:

> Nor is it persuasive to argue, as the Law Firm does, that Caplin & Drysdale stands for the proposition that attorneys acquire cause to believe that fees may be subject to forfeiture only through notice in an indictment . . . This argument is flatly wrong; it is neither supported nor invited by Caplin & Drysdale or § 853. To the contrary, fees received prior to indictment are subject to forfeiture where the other requirements of § 853 are met. At most, in circumstances other than those at bar, the absence of notice in an indictment may be one factor among many for courts to consider and weigh in determining whether an attorney was reasonable in believing that the fees were derived from legitimate sources and hence not subject to forfeiture.

In re Moffitt, Zwerling & Kemler, P.C., 846 F. Supp. 463, 471-72 (E.D. Va. 1994) (citing Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989)).

Thus, the timing of defense counsel's receipt of legal fees is a factor bearing on whether counsel qualify as bona fide purchasers for value, but it does not guarantee that their legal fees will be exempted from forfeiture. To eliminate this uncertainty, the government offered it would accept and join in agreement that defense counsel did not know, at the time of payment, that the legal fees were paid with proceeds of the instant offenses. While such a stipulation would allow defense counsel to avoid forfeiture of their legal fees, it could actually increase the amount of any financial judgment entered against defendant in this case, because it would permit the government to seek forfeiture of defendant's assets up to the value of the legal fees, as "substitute property." See

21

U.S.C. § 853(p). Accordingly, the court found this proposed stipulation would not eliminate the conflict of interest.

D. Offer to Strike the Provision

The government also offered to strike the stipulation from the proposed plea agreement, in order to alleviate any concern over the purported conflict. According to the government, an agreement not to forfeit the attorneys' fees does not create a conflict of interest, under United States v. Atkin, 80 F. Supp. 2d 779, 783 (N.D. Ohio 2000). In Atkin, the court considered a pro se prisoner's argument, raised in a 28 U.S.C. § 2255 motion, that "his trial attorneys had a conflict of interest because the United States chose not to seek forfeiture of the funds Atkin used to pay their fees." Id. The court concluded: "[o]nce again, Atkin neither cites any authority nor offers any persuasive argument for the proposition that a conflict of interest is created when the United States allows a criminal defendant to pay his attorneys." Id.

Rather than the retrospective inquiry facing the court in Atkin, here the court is asked to consider whether striking the stipulation from the proposed plea agreement eliminates the conflict of interest, in the context of the parties' present plea negotiations; therefore, Atkins is not persuasive. See Urutyan, 564 F.3d at 687 ("Unlike here, . . . the issue was a post-conviction question of whether the defendants were deprived of effective assistance of counsel, a question that turned on whether there had been an actual conflict that affected counsel's performance—as opposed to a merely theoretical division of loyalties. Here, however, the issue is whether, in the context of a pre-trial inquiry, a third-party fee arrangement poses a serious potential for conflict." (emphasis in original) (internal citations omitted)).

In this context, striking the stipulation does not eliminate the conflict of interest. Rather, it weakens defendant's bargaining power because it requires the government to relinquish one of

its desired objectives. Defendant could be better positioned to request other outcomes, such as lower sentencing exposure, if the stipulation remained intact. Likewise, any request by defense counsel to strike the stipulation from the proposed plea agreement could be perceived as defense counsel advocating on behalf of themselves, rather than their client. Therefore, the court found that striking the stipulation does not eradicate the conflict of interest.

E.  Waiver

Finally, the government argued that, assuming a conflict of interest exists, defendant can waive that conflict. As relevant here, the North Carolina Rules of Professional Conduct, provide:

> (b) Notwithstanding the existence of a concurrent conflict of interest . . . a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>> (4) each affected client gives informed consent, confirmed in writing.

N.C. R. Prof. Conduct 1.7(b).

At hearing, the court inquired whether defendant would consent to the representation, notwithstanding the conflict of interest. Defense counsel expressed serious doubt as to whether defendant could waive the conflict, and the court found this doubt to be reasonable under the circumstances. Cf. Urutyan, 564 F.3d at 687 ("[T]his fee arrangement may also discourage [defendant] from considering a plea because more than likely a coconspirator has paid his legal fees. Further, the district court considered that the Government may choose to establish the fraud conspiracy by showing the payment of $85,000 in cash to [the attorney], which would result in [the attorney] becoming a potential witness against his client. Any of these scenarios would pose an unwaivable conflict of interest, and it was therefore well within the district court's substantial

latitude to conclude that [the attorney's] representation posed a serious potential for conflict of interest." (citations omitted)).

CONCLUSION

For all these reasons, the court allowed defense counsel's motion to withdraw.

Date: July 19, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge